**Robert S. BRODIE, Appellant,**

**v.**

**UNITED STATES, Appellee.**

**Nos. 2635, 2636.**

Municipal Court of Appeals for the District of Columbia.

Argued Oct. 17, 1960.

Decided Jan. 19, 1961.

Lawrence Speiser, Washington, D. C., with whom Eugene Roberson and George Kaufmann, Washington, D. C., were on the brief, for appellant.

William H. Collins, Jr., Asst. U. S. Atty., Washington, D. C., with whom Oliver Gasch, U. S. Atty., and Carl W. Belcher, Asst. U. S. Atty., Washington, D. C., were on the brief, for appellee.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

QUINN, Associate Judge.

Brodie was convicted by the court, trial by jury having been waived, of assault and petit larceny. From the denial of his mo-

tion for a new trial on the ground of newly discovered evidence, he brings this appeal.

A filling station attendant who witnessed the theft, testifying for the government, recalled having noticed two men whom he was unable to identify approach complainant Carpenter's automobile parked nearby on Longfellow Street, N. W. When one of the men reached inside and removed a coat, the attendant summoned Carpenter, the owner of the automobile, who immediately gave chase, finally cornering the culprits in an alley. According to Carpenter, Brodie threatened him with a drawn knife, saying to one Martin, his companion, "There are two of us and only one of him; let's take him." However, Carpenter seized Martin who was holding the stolen coat; Brodie fled.

On March 29, 1960, the day after the affair, Brodie appeared at the United States Branch of the Criminal Division of the Municipal Court allegedly to observe a case involving one Joyce Benjamin, a friend. He happened to occupy the seat next to Carpenter, who was present for the trial of Martin. On this date Martin was arraigned for stealing the coat, entered a plea of guilty, and was sentenced. Carpenter recognized Brodie and later, accompanied by a police detective, questioned him in the hall. He denied participating in the incident. That night Brodie was arrested.

At trial, Brodie denied knowing Martin and has continuously protested his innocence. He made the defense of alibi and in this he was supported by his wife, his mother, and a neighbor. All affirmed that he was at home—a considerable distance from the scene—in their company at the time the crime was committed.

After Brodie's conviction the defense moved for a new trial on the basis of newly discovered evidence and filed an affidavit of Martin absolving Brodie of complicity in the crime. At the hearing of the motion Martin testified that he had conferred with Brodie in jail and had come forward because he did not want to see a guiltless man imprisoned. He named one Tatum as his companion on the occasion but also absolved the latter of guilt, confessing that he, Martin, had taken the coat on a sudden impulse. Present in the courtroom, Tatum was called forward, and as he advanced the court noted that there was a four to six-inch height difference between Tatum and Brodie, although Martin had earlier described both men as having similar physical appearances. Taking the stand, Carpenter studied both men and positively identified Brodie as Martin's accomplice. The defense did not call Tatum to testify. The court denied the motion for new trial.

Subsequently, a motion for rehearing was submitted with an affidavit of Eugene Roberson, Brodie's attorney. The gist of this sworn statement and his testimony at the ensuing hearing concerned two conversations with Tatum and certain members of his family. At both interviews, Tatum reportedly admitted that he, not Brodie, was with Martin when the latter stole the coat. He asserted that he had been completely unaware that Martin was going to commit the crime but not wanting to become implicated, he refused to admit his presence at the scene to the authorities. The court again rejected the petition for new trial.

It is commonly stated that the trial court is vested with wide latitude in deciding a motion for new trial on the basis of newly discovered evidence and that its disposition thereof will not be disturbed in the absence of manifest abuse.[1] Yet, in the exercise of this discretion certain governing criteria must first be met.

As enumerated in Thompson v. United States:

"* * * To obtain a new trial because of newly discovered evidence (1) the evidence must have been discovered since the trial; (2) the party seeking the new trial must show diligence in

---

1. McDonnel v. United States, 81 U.S.App.D.C. 123, 155 F.2d 297 (1946).

the attempt to procure the newly discovered evidence; (3) the evidence relied on must not be merely cumulative or impeaching; (4) it must be material to the issues involved; and (5) of such nature that in a new trial it would probably produce an acquittal. * * *"[2]

 In the case before us appellant failed to satisfy the burden of showing that he exerted due diligence in producing the evidence which he has characterized as newly discovered. Indeed, the record discloses that he never made any effort in that direction for there is a conspicuous—and decisive—absence of an explanation accounting for Martin's nonappearance at Brodie's trial. Brodie has steadfastly insisted that he is the innocent victim of mistaken identity; yet Martin, the self-confessed perpetrator of the theft, was not called as a witness, although, as events later confirmed, he was the obvious and willing source of vital evidence.

In Amos v. United States, the appellant was awarded a new trial on the basis of newly discovered evidence because prison officials had failed to produce as a witness a prisoner by the name of Bordeaux. The court pointedly declared, "It was no fault of the defendant or his counsel that Bordeaux was not available at the trial."[3] It has not been charged here that Brodie was denied access to Martin, that the latter was unavailable for trial, or that any other factors were present which would focus the blame somewhere other than on Brodie.

The same infirmity may be assigned to Roberson's affidavit and testimony. Certainly, it was foreseeable that Martin could furnish the name of his partner and that such information would be of great importance in establishing Brodie's defense. Nevertheless, the defense ignored this course of action even when Tatum made his appearance at the first hearing. Strangely, Tatum was not then asked to testify.

 Aside from this, the trial court possessed the power to assess the credibility of the witnesses and to disregard their testimony if it seemed unworthy of belief.[4] In brief, the state of the record falls far short of showing that the dismissal of the motion was an abuse of discretion.

Affirmed.

ROVER, Chief Judge, sat during the argument of this case but died before it was decided.

2. 88 U.S.App.D.C. 235, 236, 188 F.2d 652, 653 (1951).

3. 95 U.S.App.D.C. 31, 218 F.2d 44 (1954).

4. Blackburn v. United States, 97 U.S.App. D.C. 62, 228 F.2d 33 (1955).