960 A.2d 787 (2008)
404 N.J. Super. 119
Bertha BUENO, Appellant,
v.
BOARD OF TRUSTEES, TEACHERS' PENSION & ANNUITY FUND, DIVISION OF PENSIONS AND BENEFITS, Respondent.
DOCKET NO. A-0916-07T2.
Superior Court of New Jersey, Appellate Division.
Argued September 10, 2008.
Decided December 11, 2008.
*789 Samuel J. Halpern, West Orange, argued the cause for appellant.
Danielle P. Bradus, Deputy Attorney General, argued the cause for respondent (Anne Milgram, Attorney General, attorney; Lewis A. Scheindlin, Assistant Attorney General, of counsel; Ms. Bradus, on the brief).
Before Judges CUFF, C.L. MINIMAN and BAXTER.
The opinion of the court was delivered by
C.L. MINIMAN, J.A.D.
Appellant Bertha Bueno (Bueno) appeals a final administrative decision by respondent Board of Trustees, Teachers' Pension and Annuity Fund, Division of Pensions and Benefits (the Board), denying her application for ordinary disability retirement benefits on the ground that she is not totally and permanently disabled from the performance of her regular and assigned duties as a teacher. We affirm.
Bueno applied for ordinary disability retirement benefits pursuant to N.J.S.A. 18A:66-39(b) on May 23, 2006. Her application was denied by the Board at its regular monthly meeting on November 2, 2006. Bueno appealed the Board's decision on November 20, 2006. At its January 4, 2007, meeting, the Board approved Bueno's request for a hearing and transferred the matter to the Office of Administrative Law as a contested case. A plenary hearing was conducted on April 23 and June 4, 2007, and the Administrative Law Judge (ALJ) issued a written opinion on July 26, 2007. At its September 6, 2007, meeting, the Board considered the ALJ's decision and the exhibits marked into evidence at the hearing and adopted the ALJ's decision. This appeal followed.
Bueno was born on January 1, 1943, and obtained a degree in education. She taught for five years before having a family and then returned to teach in East Brunswick in the early 1980s. She then became employed by the New Brunswick Board of Education on July 23, 2001, at the Woodrow Wilson School. She assisted with prekindergarten the first year and then taught that grade for the second year. Thereafter, she was a "floater," teaching reading and mathematics. She became tenured after three years. For the 2005-06 school year, she was assigned to teach second grade. She resigned from teaching at the end of that school year.
During her last year teaching, Bueno experienced problems interacting with her principal and the administration. She testified that the principal angrily criticized her in front of the children for not using *790 the proper curriculum. She was also told by the principal and vice principal that she was not doing a good job. She was given a sixty-day notice to improve in the fall, a second sixty-day notice in the winter, and a thirty-day notice in the spring. Bueno also testified that she felt threatened and began to cry at a meeting with them. She felt that her age of sixty-three and her salary of $72,500 were the motivating factors for the perceived unjust criticism.
Throughout the year, the principal and vice principal would observe in her classroom three or four times a week, whereas tenured teachers generally were only observed once or twice a year. These observations led to almost twenty write-ups. Bueno complained to her union representative before the end of 2005 that she was being harassed and could not perform her teaching duties, but the union's meeting with the principal did not resolve the situation.
Bueno then resumed weekly treatment with her psychologist, Carol Turner, Ed.D. Eventually, Dr. Turner recommended that Bueno take medication but she refused to consider it. Rather, she took holistic medicines provided by Marc Condren, M.D. She took a week off in March 2006 to relax but, when she returned to school, the alleged harassment became worse. Bueno saw a cardiologist in the spring because she experienced chest pains and heart palpitations during most of the work day that spring. When Bueno realized that she could no longer teach under these circumstances, she submitted her application for ordinary disability retirement benefits on May 23, 2006. The following month, Bueno then sought a transfer to another school in New Brunswick. When that request was denied, she resigned effective the end of the school year, although she would not have done so had she been transferred to another school.
The sole issue before the Board was whether Bueno was totally and permanently incapacitated from the performance of her regular and assigned duties as a teacher. Bueno's application was supported by Drs. Turner and Condren. The Board asked Bueno to submit to an evaluation by Martin Mayer, M.D., a psychiatrist. All three experts testified at the hearing before the ALJ, who concluded that the testimony and opinions of Dr. Mayer were credible, whereas the testimony and opinions of Drs. Turner and Condren were not credible. Thus, the ALJ relied exclusively on the testimony of Dr. Mayer in concluding that Bueno was not "mentally incapacitated for or permanently disabled from the performance of her duties."
Dr. Mayer's testimony supports the ALJ's conclusion. Dr. Mayer opined that Bueno had an adjustment disorder, which is reactive to stress and merely transient, disappearing as the stress is relieved. He further opined that Bueno had an anxiety disorder, which was entirely treatable with proper medication. He concluded that Bueno was not totally and permanently disabled from teaching and, in a more appropriate setting for her skills and personality, could function as a teacher.
Bueno argues before us that the Board's final administrative decision denying her an ordinary disability retirement pension "was unreasonable and lacked fair support in the record." Specifically, she contends that Dr. Mayer acknowledged that she could not function as a second-grade teacher at the Woodrow Wilson School even with medication. Although Dr. Mayer maintained that Bueno could work in a more supportive environment, Bueno points out that the New Brunswick Board of Education refused her request for a transfer. She argues that the case law on which the Board relied does not require that she be disabled from working as a *791 teacher for another employer and, thus, she was entitled to ordinary disability retirement benefits.
Our review of final agency action is limited. Gerba v. Bd. of Trs., Pub. Employees' Ret. Sys., 83 N.J. 174, 189, 416 A.2d 314 (1980) (citations omitted). The judicial role in reviewing decisions of administrative agencies is restricted to the following four inquiries:
(1) whether the agency's decision offends the State or Federal Constitution; (2) whether the agency's action violates express or implied legislative policies; (3) whether the record contains substantial evidence to support the findings on which the agency based its action; and (4) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
[George Harms Constr. Co. v. N.J. Tpk. Auth., 137 N.J. 8, 27, 644 A.2d 76 (1994).]
Accordingly, "[o]ur function is to determine whether the administrative action was arbitrary, capricious or unreasonable." Burris v. Police Dep't, W. Orange, 338 N.J.Super. 493, 496, 769 A.2d 1112 (App.Div.2001) (citing Henry v. Rahway State Prison, 81 N.J. 571, 580, 410 A.2d 686 (1980)). The precise issue is whether the findings of the agency could have been reached on the credible evidence in the record, considering the proofs as a whole. Close v. Kordulak Bros., 44 N.J. 589, 599, 210 A.2d 753 (1965). The burden of demonstrating that the agency's action was arbitrary, capricious or unreasonable rests upon the person challenging the administrative action. McGowan v. N.J. State Parole Bd., 347 N.J.Super. 544, 563, 790 A.2d 974 (App.Div.2002) (citing Barone v. Dep't of Human Servs., 210 N.J.Super. 276, 285, 509 A.2d 786 (App.Div.1986), aff'd, 107 N.J. 355, 526 A.2d 1055 (1987)).
"It is settled that `[a]n administrative agency's interpretation of statutes and regulations within its implementing and enforcing responsibility is ordinarily entitled to our deference.'" Wnuck v. N.J. Div. of Motor Vehicles, 337 N.J.Super. 52, 56, 766 A.2d 312 (App.Div.2001) (quoting In re Appeal by Progressive Cas. Ins. Co., 307 N.J.Super. 93, 102, 704 A.2d 562 (App.Div.1997)). "Absent arbitrary, unreasonable or capricious action, the agency's determination must be affirmed." Ibid. (citing R & R Mktg., L.L.C. v. Brown-Forman Corp., 158 N.J. 170, 175, 729 A.2d 1 (1999)). "Although we recognize that deference is generally given to an administrative agency charged with interpretation of the law, we are not bound by the agency's legal opinions." Levine v. State, Dep't of Transp., 338 N.J.Super. 28, 32, 768 A.2d 192 (App.Div.2001)(citing G.S. v. Dep't of Human Servs., 157 N.J. 161, 170, 723 A.2d 612 (1999)).
The ordinary disability retirement statute that the Board is charged with interpreting and applying provides:
On and after June 9, 1971, a member... who has 10 or more years of credit for New Jersey service, shall, ... upon his own application..., be retired for ordinary disability by the board of trustees. The physician or physicians designated by the board shall have first made a medical examination of him at his residence or at any other place mutually agreed upon and shall have certified to the board that the member is physically or mentally incapacitated for the performance of duty and should be retired.
[N.J.S.A. 18A:66-39(b) (emphasis added).]
The applicant for ordinary disability retirement benefits has the burden *792 to prove that he or she has a disabling condition and must produce expert evidence to sustain this burden. Patterson v. Bd. of Trs., State Police Ret. Sys., 194 N.J. 29, 50-51, 942 A.2d 782 (2008). A teacher with a disabling mental condition may qualify for ordinary disability retirement benefits. See Kasper v. Bd. of Trs., Teachers' Pension & Annuity Fund, 164 N.J. 564, 573, 754 A.2d 525 (2000) ("Ordinary disability is conferred when a teacher, who is a member of the retirement system, is `physically or mentally incapacitated for the performance of duty and should be retired.'") (quoting N.J.S.A. 18A:33-69(b)); Maynard v. Bd. of Trs., Teachers' Pension & Annuity Fund, 113 N.J. 169, 171, 177, 549 A.2d 1213 (1988) (reinstating Board decision denying accidental disability benefits and granting ordinary disability benefits to plaintiff who was totally and permanently disabled); cf. Pushko v. Bd. of Trs., Teachers' Pension & Annuity Fund, 202 N.J.Super. 98, 104, 493 A.2d 1309 (App.Div.) (finding Pushko qualified for accidental disability retirement benefits), remanded on other grounds, 102 N.J. 349, 508 A.2d 221 (1985). Thus, Bueno's mental condition, if proved to be disabling, would establish a disability within the meaning of the statute. See Kasper, supra, 164 N.J. at 573, 754 A.2d 525.
Bueno urges that In re Grossman, 157 N.J.Super. 165, 384 A.2d 855 (App.Div. 1978) (Grossman), is "somewhat instructive on the extent to which an employee who is disabled from work in his or her immediate workplace must look for other similar positions outside the said workplace." She argues that we did not require that Grossman "apply to each and every school district in the stat[]e before she [c]ould qualify for disability."
Grossman was a teacher employed by the Bernards Township Board of Education who underwent sex-reassignment surgery in 1971 and began thereafter to live openly as a woman. Id. at 166, 384 A.2d 855. The Board of Education filed written charges against her and ultimately dismissed her without back pay, finding her "incapacitated" to teach children under N.J.S.A. 18A:6-10. We affirmed the dismissal, but reinstated back pay. In re Tenure Hearing of Grossman, 127 N.J.Super. 13, 36, 316 A.2d 39 (App.Div.1974) (Tenure Hearing). The Bernards Township Board of Education then filed an application on Grossman's behalf for ordinary disability retirement. Grossman, 157 N.J.Super. at 166, 384 A.2d 855. That application was denied by the Board. Ibid. Grossman appealed, and we reversed.
We noted that in our Tenure Hearing opinion we had "`expressed no opinion with respect to her fitness to teach elsewhere and under circumstances different from those revealed in the present case.'" Id. at 168, 384 A.2d 855 (quoting Tenure Hearing, 127 N.J.Super. at 32, 316 A.2d 39). However, in Grossman, the denial of the ordinary disability retirement required us to reach that issue. Ibid. After noting the paucity of witnesses testifying to Grossman's fitness to teach, we commented that the "plain fact is that no school district will employ her because of her transsexual status and the feared effect that may have on pupils she might be called upon to teach." Ibid.
We do not find Grossman instructive on the issue for which Bueno cites it. Bueno was not terminated from her position and the State Board of Education did not determine her to be incapacitated from teaching. Furthermore, Dr. Mayer testified that she was not disabled from teaching in a more supportive environment. There is nothing in the record before us demonstrating that, like Grossman, Bueno's presence in a classroom would *793 have a deleterious impact or effect on students in all other schools in New Jersey. Cf. Grossman, supra, 157 N.J.Super. at 169, 384 A.2d 855. We thus see no basis for relieving her from the obligation to seek work as a teacher in a school system other than New Brunswick. She obviously worked successfully for almost two decades in the East Brunswick school system and did so for four years in the New Brunswick school system.
Bueno's reliance on Getty v. Prison Officers' Pension Fund, 85 N.J.Super. 383, 204 A.2d 883 (App.Div.1964), and Skulski v. Nolan, 68 N.J. 179, 343 A.2d 721 (1975), in support of her contention that she was not required to prove a general disability to teach is also misplaced. Getty was an employee of the Department of Institutions and Agencies in charge of a soap factory. Getty, supra, 85 N.J.Super. at 385, 204 A.2d 883. His physician found him to be suffering from emphysema as a result of caustic fumes and industrial soap dust that he inhaled while employed in the soap factory. Ibid. While he was out sick, the State attempted to find other employment for him but was not successful. Ibid. Getty applied for a service disability retirement, which the Fund denied on the grounds that Getty was not permanently disabled and any disability was not received in the performance of his duties. Id. at 386-87, 204 A.2d 883.
The applicable statute provided: "`Any such prison officer who shall have received permanent disability in the performance of his duty, shall, upon the certificate of a physician designated for that purpose by the pension commission, be retired on a pension equal to one-half of his salary at the time of his retirement.'" Id. at 388, 204 A.2d 883 (citing N.J.S.A. 43:7-12).[1] We concluded that the Fund's findings were inadequate to sustain its denial. Id. at 390, 204 A.2d 883. In remanding the matter, we held "that the criterion is whether or not Getty is employable in the general area of his ordinary employment, as distinguished from whether he is generally unemployable or is disabled from performing the specific function for which he was hired." Ibid. (citation omitted).
It is clear that the distinction we drew in Getty was between applicants who were disabled but otherwise employable in their given field and applicants who were generally unemployable. Ibid. The latter criterion, which we rejected in Getty, would require proof that the applicant was disabled from working in any occupation. See ibid. On the other hand, the former criterion, which we adopted, would still permit the Board to require Bueno to prove that she was disabled from teaching generally, not just from teaching in the New Brunswick school system, because Getty did not reach the issue of whether the general area of ordinary employment was limited to employment by the State, although that was the context in which we considered the appeal. See ibid.
The criterion we developed in Getty was adopted by the Skulski Court. Skulski, supra, 68 N.J. at 205, 343 A.2d 721. There, the Supreme Court considered the issue of job-connected disability under N.J.S.A. 43:10-4, which at that time provided: "A county employee who shall have received a permanent disability by reason of injury, accident or sickness, incurred at any time in the service, which permanently *794 incapacitates him, shall, upon the certificate of a physician designated for that purpose by the pension commission, be retired on half pay." Skulski, supra, 68 N.J. at 194 n. 7, 343 A.2d 721. The Court concluded that "it is necessary to consider the standards governing `permanent disability... incurred ... in the service' of the county as those terms are used in N.J.S.A. 43:10-4." Id. at 202, 343 A.2d 721.
In support of her position that she need only show that she was disabled from teaching in New Brunswick, Bueno relies on the following language in the Skulski opinion wherein the Court adopted the Getty criterion:
It is apparent that the [Getty] formulation of the standard governing permanent disability is somewhat more restrictive than the Meehan-Simmons[[2]] approach in the sense that under Getty the applicant must establish incapacity to perform duties in the general area of his ordinary employment rather than merely showing inability to perform the specific job for which he was hired. We believe that the Getty standard represents a fair accommodation of the competing interests in this context and consequently we adopt it as the appropriate test for establishing disability under N.J.S.A. 43:10-3 and 4.[[3]] We emphasize, however, that the standard we adopt places no requirement upon the applicant to show physical inability to perform substantially different duties or to produce evidence of general physical unemployability provided, however, that employer has work for him in the general area of his employment.
[Id. at 205-06, 343 A.2d 721 (footnotes and emphasis added).]
Bueno argues that the last above-quoted sentence relieves her of the burden to show that she cannot teach generally. We disagree. Under Skulski, Bueno was required to "establish incapacity to perform duties in the general area of [her] ordinary employment" as a grade-school teacher. Id. at 205, 343 A.2d 721. Although the Skulski Court emphasized that the Getty standard does not require an applicant "to show physical inability to perform substantially different duties or to produce evidence of general physical unemployability," the Court made it clear that was only true when the "employer has work for [the applicant] in the general area of his employment." Id. at 206, 343 A.2d 721. However, where the employer has no work for the employee in the general area of his or her ordinary employment, then the employee may be required to "show physical inability to perform substantially different duties or to produce evidence of general physical unemployability." Ibid. Otherwise, ordinary unemployment for lack of work where the employee is disabled from performing his or her specific job duties might trigger an entitlement to ordinary disability retirement benefits even though the employee is quite capable of working for another employer and even, possibly, performing substantially different duties.
*795 No reported decision has been called to our attention where an ordinary disability retirement pension was granted to a teacher who only established an inability to perform his or her specific job for a specific board of education nor have we found one. Indeed, Grossman, where we found that a teacher was disabled from teaching generally, is clearly to the contrary. Consequently, we hold that where a public employer has no other work for a public employee disabled from performing his or her assigned job duties, such an employee must at a minimum prove an "incapacity to perform duties in the general area of his ordinary employment" for other employers and may even be required to prove "inability to perform substantially different duties or ... produce evidence of general physical [or mental] unemployability," Skulski, supra, 68 N.J. at 206, 343 A.2d 721, in order to qualify for ordinary disability retirement benefits. Because Bueno failed to even prove that she was disabled from teaching for other employers, we affirm the final decision of the Board.
Affirmed.
NOTES
[1] N.J.S.A. 43:7-12 was subsequently amended to provide, "Any such prison officer who shall have received permanent disability as a direct result of a traumatic event occurring while performing his regular or assigned duties shall be retired upon an accidental disability pension equal to 2/3 of his average final compensation." See L. 1969, c. 56, § 4 (emphasis added).
[2] Meehan v. County Employees' Pension Comm'n, 135 N.J.L. 17, 18, 48 A.2d 827 (E. & A. 1946); Simmons v. Policemen's Pension Comm'n, 111 N.J.L. 134, 166 A.2d 925 (Sup.Ct. 1933).
[3] These statutes were both repealed by L. 1973, c. 345, § 14, effective Dec. 27, 1973. N.J.S.A. 43:10-3 had provided: "An employee of a county of the first class who shall have served in the county's employ for a period of twenty years and shall have been found, as hereinafter provided, to be physically unfit for further service, shall, whether or not he has reached sixty years of age, upon written application to the pension commission, be retired on half pay." Their current formulation may be found at N.J.S.A. 43:10-5.1, -5.2.