**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1954-16T3

ELAINE GECHTMAN,

    Petitioner-Appellant,

v.

TEACHERS' PENSION AND ANNUITY
FUND,

    Respondent-Respondent.

_____

          Submitted June 19, 2018 - Decided July 27, 2018

          Before Judges Simonelli and Koblitz.

          On appeal from the Board of Trustees of the
          Teachers' Pension and Annuity Fund, TPAF No.
          02013-2015N.

          Bergman and Barrett, attorneys for appellant
          (Michael T. Barrett, of counsel and on the
          brief).

          Gurbir S. Grewal, Attorney General, attorney
          for respondent (Melissa Dutton Schaffer,
          Assistant Attorney General, of counsel; Robert
          S. Garrison, Jr., Deputy Attorney General, on
          the brief).

PER CURIAM

    Elaine Gechtman appeals from the December 2, 2016 final

determination of the Board of Trustees of the Teachers' Pension

and Annuity Fund (TPAF) rejecting the Administrative Law Judge's (ALJ) initial decision that Gechtman was totally and permanently disabled and therefore eligible for ordinary disability retirement benefits.  We affirm.

Gechtman was first employed in October 2000, and retired on July 1, 2014, after applying in May for a disability pension.  On December 5, 2014, the Board of TPAF initially found Gechtman, a former Elizabeth elementary school teacher who retired after almost fifteen years of work, was not totally and permanently disabled from the performance of her regular and assigned duties, and was therefore ineligible for a disability retirement.  N.J.S.A. 18A:66-39(b).  She appealed, and the matter was transferred to the Office of Administrative Law where an ALJ conducted three days of hearings.  A delay in receiving transcripts led to the ALJ finally requiring post-hearing submissions without the transcripts, four months after the close of the hearing.

The ALJ found that Gechtman, then sixty-seven years old, had worked as an "itinerant teacher, a position that was akin to a floater and took her to different classrooms and buildings."  The ALJ found Gechtman was "constantly [] up and standing."  She "would often get on the floor" with the younger students and "involved herself physically in teaching her students."  Gechtman testified that she had worked in the same building the last few years, where

she had to climb stairs often when the elevator was broken, which was extremely hard for her to do.

When she filed her ordinary disability retirement application, Gechtman stated she suffered from[1]

> Achilles bursitis/tendinitis and lumbar and back problems which includes having problems walking with stairs and bending, carrying thing in front of me.

> A student swinging a backpack as I was walking down the stairs the backpack went under my foot and flipped me over the rest of the stairs and outside the building. I was heading towards the right and did not want to hurt the student I swung my body to the left and another student was there and I swung my body to the middle and ended up falling onto cement and ended up at the doctors.

Gechtman testified this accident occurred in October 2005. She returned to work about a month later, although her physical condition continued to deteriorate. Gechtman also submitted forms from two treating doctors, a pain management specialist and Dr. Walter Pedowitz, her treating orthopedic surgeon for the past ten years, attesting to her inability to perform her duties. Dr. Pedowitz stated in his certification that Gechtman suffered from "spinal stenosis," and had physical symptoms of "weak legs," "spasms and difficulty walking." The ALJ found that not only was it "difficult for Gechtman to . . . do her job," but that at home

---

[1] We repeat the statement exactly as written, except that it was submitted in capital letters.

she could not put on socks, climb stairs, wash laundry or dishes or clean her own home.  She could only drive a car for about twenty-five minutes at a time.

Dr. David Weiss, Gechtman's testifying expert, conducted his own examination, commenting on the disc bulges and surgery done by Gechtman's treating doctor.  His examination revealed significant orthopedic difficulties and he commented that Gechtman utilized a cane.  He found that she is "unable to engage in her job related functions."  He described those functions in his report, stating:  "This job requires her to perform repetitive bending with pre-school children, prolonged standing, going up and down stairs, [and] getting the children out safely for fire drills."

The ALJ found Dr. Weiss, who was qualified as an expert in orthopedic medicine, more credible than the independent medical examiner selected by the Board, Dr. Arnold Berman, finding that "Berman examined an apparently very different Gechtman than any other physician who examined her before or after him."  After a twenty-five to thirty minute physical examination, Berman found no evidence of meniscal tears, although Gechtman had an operation to repair a torn meniscus just one month after the examination. When this information was provided to Dr. Berman, it did not change his opinion.

The ALJ found that Gechtman was "unable to perform the duties and responsibilities of her general area of employment, which is as a classroom teacher. Her ability to perform sedentary work is clearly irrelevant for purposes of determining her eligibility for a disability retirement pension, because her ordinary employment is not sedentary." The ALJ reversed the Board's initial decision.

The Board pointed out that, unlike with lay witnesses, it need not defer to the ALJ on the credibility of expert witnesses. ZRB, LLC v. N.J. Dep't of Envtl. Prot., 403 N.J. Super. 531, 561 (App. Div. 2008); see N.J.S.A. 52:14B-10(c) (allowing the Board to reject an ALJ's credibility findings with regard to a lay witness only if those findings are arbitrary, capricious or unreasonable or unsupported by sufficient credible evidence).

The Board rejected the ALJ's credibility findings with regard to the experts, determining the ALJ rejected Dr. Berman's findings with insufficient explanation. The Board believed the ALJ should have weighed the different credentials of the two experts as Dr. Berman was a board-certified orthopedist while Dr. Weiss was a doctor of osteopathy who was not a board-certified orthopedist. Most importantly, the Board found that the ALJ found only that Gechtman could not perform the duties of her actual job, rather than the job for which she was hired.

Our review of administrative agency action is limited. We generally "afford substantial deference to an agency's interpretation of a statute that the agency is charged with enforcing." Richardson v. Bd. of Trs., 192 N.J. 189, 196 (2007). "Such deference has been specifically extended to state agencies that administer pension statutes" because "'a state agency brings experience and specialized knowledge to its task of administering and regulating a legislative enactment within its field of expertise.'" Piatt v. Police & Firemen's Ret. Sys., 443 N.J. Super. 80, 99 (App. Div. 2015) (quoting In re Election Law Enf't Comm'n Advisory Op. No. 01-2008, 201 N.J. 254, 262 (2010)). We are not, however, "bound by the agency's interpretation of a statute or its determination of a strictly legal issue." Richardson, 192 N.J. at 196 (quoting In re Taylor, 158 N.J. 644, 658 (1999)).

The burden of proof of ordinary disability lies with the employee. Bueno v. Bd. of Trs. Teachers' Pension & Annuity Fund, 404 N.J. Super. 119, 126 (App. Div. 2008), certif. denied, 199 N.J. 540 (2009). The employee "must establish incapacity to perform duties in the general area of [her] ordinary employment rather than merely showing inability to perform the specific job for which [she] was hired." Skulski v. Nolan, 68 N.J. 179, 205-06 (1975).

The duties of a classroom teacher are defined as follows:

> To assist students to fulfill their potential for intellectual, emotional, physical and psychological growth, and to provide them with the knowledge and skills essential for full participation as responsible citizens.

No physical requirements are included in this job description. As the ALJ noted, the description tells what should be done, but not how. Presumably, the job could be performed by an employee who utilizes a wheelchair to ambulate. Although Gechtman performed her particular job with significant physical effort, she did not demonstrate that standing for long periods of time, climbing stairs, sitting on the floor and carrying things were necessary to teach young children in other settings.

We note that people in their mid-sixties frequently have physical limitations such as those experienced by Gechtman. The Board has the obligation to safeguard pension resources. In re Town of Harrison, 440 N.J. Super. 268, 300 (App. Div. 2015).

We must affirm an administrative decision even if we might have decided differently. Campbell v. N.J. Racing Comm'n, 169 N.J. 579, 587 (2001). The Board determined, in essence, that no particular physical strength or mobility was required to perform the kindergarten through eighth-grade teaching job. Thus, regardless of the derivation of Gechtman's injury, or the

credibility of the experts, she is not disabled.  We defer to the Board's expertise.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1954-16T3