**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2780-20

JENNIFER MACK,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
TEACHERS' PENSION AND
ANNUITY FUND,

     Respondent-Respondent.

_____

Argued August 2, 2022 – Decided August 24, 2022

Before Judges Geiger and Rose.

On appeal from the Board of Trustees of the Teachers' Pension and Annuity Fund, Department of the Treasury.

Richard A. Friedman argued the cause for appellant (Zazzali, Fagella, Nowak, Kleinbaum & Friedman, attorneys; Richard A. Friedman, of counsel and on the briefs; Sheila Murugan, on the briefs).

Brian D. Ragunan, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Acting Attorney General, attorney; Sookie Bae-Park,

Assistant Attorney General, of counsel; Brian D. Ragunan, on the brief).

PER CURIAM

Jennifer Mack, a former teacher and school administrator, appeals from an April 26, 2021 final decision of the Board of Trustees (Board) of the Teachers' Pension and Annuity Fund (TPAF), denying her application for ordinary disability retirement benefits. The Board rejected the findings of an administrative law judge (ALJ), who determined Mack was totally and permanently disabled from her employment under N.J.A.C. 17:1-6.4, when she left her administrative position with the Delran Board of Education (Delran) in October 2015. Because we agree with the Board that Mack failed to establish her disabling condition was the reason she left Delran, we affirm.

I.

We summarize Mack's contentions, which are largely undisputed, from the record before the ALJ. Mack began her teaching career in 1998 and thereafter worked for various school districts. Pertinent to this appeal, in August 2014, Mack commenced employment as a Delanco elementary school principal for the 2014-15 school year. Mack supervised all the school's employees.

A-2780-20

According to Mack, in late March 2015, the Delanco superintendent informed Mack she was not "a good fit" for the position, and likely would not be renewed if she chose not to resign. Mack resigned but had difficulty completing the academic year. At some point, a Board member confirmed rumors Mack had heard that the "real reason" she was non-renewed was her sexual orientation. Because Mack believed she was "looked upon differently," her "competence level was extremely deteriorated." Mack experienced panic attacks, lethargy, anxiety, and depression. She was withdrawn at work and in her personal life. Mack sought treatment from her general practitioner, and was prescribed antidepressant medication.

In July 2015, after completing her contract with Delanco, Mack became the student services director for the Delran, where she remained employed until October 2015. Mack's self-esteem diminished, and her depression and anxiety worsened. Mack was often emotional at work.

Mack testified she left Delran because she suffered from depression and was unable "to keep up" with her responsibilities. She testified that she felt sick, lost sleep, cried, and had a "sick-to-[her]-stomach feeling" that she "just . . . couldn't do it anymore." In sum, Mack claimed she "was ill."

A-2780-20

Mack's September 20, 2015 resignation letter painted a different picture. Mack commenced the letter, stating: "After much consideration, I have decided that this position, Director of Student Services, does not fit well with my professional strengths or allow me to serve students and teachers in a capacity that is at the core of what I love about being an Educational Leader." The remaining two paragraphs make no mention of her illness. According to the letter, Mack's resignation was effective in sixty days.

Nine days later, on September 29, 2015, Mack supplemented her resignation letter, advising her final day with Delran would be October 13. Mack claimed: "This is due to a medical [leave of absence] that I am taking which will be in effect th[r]ough the remainder of my sixty days with the district." At the hearing, Mack explained she used her remaining sick time so she could "receive maybe two more paychecks before [she] was technically done with the district."

In January 2016, Mack accepted a six-month part-time position with the Burlington County Juvenile Detention Facility as a site supervisor. While employed at the detention facility, Mack's symptoms continued unabated, and she continued taking her prescribed medications. Mack testified she was "minimally . . . able to do the job because the job was so minimal compared to

4

[her prior employment]." However, in June 2016, before her contract ended, Mack was hospitalized and never returned to work.

On July 27, 2017, Mack applied for TPAF ordinary disability retirement benefits. Following her examination by Daniel B. LoPreto, Ph.D., in June 2018, the Board denied Mack's application, finding pursuant to N.J.A.C. 17:1-6.4, she "w[as] not totally and permanently disabled at the time [she] left employment with Delran . . . in October 2015." Mack appealed and the matter was transferred to the Office of Administrative Law as a contested case.

During the two-day hearing before the ALJ, Mack testified consistently with her account summarized above. She also presented the testimony of two Delran colleagues – an assistant principal, and a learning disability teacher consultant – who corroborated Mack's testimony that she was outwardly depressed while employed at Delran. Mack did not present the testimony of a treating mental health professional. Instead, each side called an expert, who examined Mack for the purposes of this action: Mack called Daniel B. Gollin, M.D., an expert in psychiatry; the Board called Dr. LoPreto, an expert in psychology. The ALJ also considered documentary evidence presented by both parties, including their experts' reports.

A-2780-20

During the hearing, Mack's disability was not in dispute; at issue was the onset of her disability.  Not surprisingly, the experts' opinions diverged on this issue.

Dr. Gollin's October 18, 2019 psychiatric evaluation of Mack consisted of an interview to gather her medical, psychiatric, and life history, and a simultaneous examination to observe her behavior.  He testified in some detail about Mack's account of her depressive symptoms.  Dr. Gollin also reviewed records from Mack's prior treating doctors.  He diagnosed Mack as meeting the DSM-5[1] criteria for bipolar II disorder.

Dr. Gollin opined Mack "became disabled around the time . . . she was not renewed for her contract [with] Delanco . . . [e]ven though she worked in Delran for some short period [thereafter]."  He based his opinion on Mack's "failure to really be able to succeed at the job [with] Delran and her continuously worsening mental state during the entire time."  He testified that her mental state "clearly deteriorated, commencing at the point where she was departing from Delanco, and it had a pretty steady downwards trajectory until the point that she was hospitalized."

---

[1]   Am. Psychiatric Ass'n, <u>Diagnostic and Statistical Manual of Mental Disorders</u> (5th ed. 2013).

A-2780-20

On cross-examination, Dr. Gollin acknowledged he "couldn't say with an exact date" when Mack was disabled and that much of his opinion was based on Mack's self-reporting. When pressed as to whether he considered "objective evidence," Dr. Gollin responded, he "d[idn't] know that there [wa]s any objective results other than [his] observations of her"; "her ability to tell the story"; "and her ability to pay attention during the interview, or her ability to recall some of the specifics."

By contrast, Dr. LoPreto testified his examination of Mack consisted of "three parts": "the record review"; "the face-to-face examination"; and "the administration of psychological testing." As part of his evaluation, Dr. LoPreto administered the forensic Personality Assessment Inventory (PAI), which utilizes "validity scales" to ensure the accuracy of the test results. He opined Mack's scores showed some "minimization of problems," which meant "her results may [have] underestimate[d] the degree of distress that she [wa]s experiencing" at the time of the examination. Mack's "clinical profile was totally within the normal limits; there was no significant elevations on the scales measuring anxiety, post-traumatic stress disorder, obsessive compulsive disorder, and major depression."

7

Based on his review of Mack's medical records and his evaluation, Dr. LoPreto concluded she "was totally and permanently disabled from performing the material duties of her job." Dr. LoPreto's diagnosis was "major depressive disorder, recurrent, severe, without psychotic features, and generalized anxiety disorder, which [wa]s consistent with some of the diagnoses rendered by her treatment providers in 2016 and 2017."

However, Dr. LoPreto differed from Dr. Gollin regarding the onset of Mack's disability, opining "things kind of came crashing down in June [2016], . . . when the disability got to the point where she needed to be hospitalized." To support his opinion, Dr. LoPreto cited the April 2016 report of Mack's treating health center, "when the diagnosis changed to major depression" under the DSM-5.

Dr. LoPreto also cited Mack's job search after she left Delran, during which time she was not "involved in any kind of intensive inpatient treatment" and "[wa]s being stabilized by her outpatient provider" as further evidence she did not have a psychological disability. He noted Mack "was successful in finding employment with the juvenile center in November and that job began in January [2016]." He opined that Mack left her employment with Delran in

A-2780-20

October 2015 due to "job dissatisfaction at the time, as stated in her [September 20, 2015] letter."

The ALJ concluded Mack proved "her mental health conditions were disabling by October 2015." Finding "[t]he evidence d[id] not support a finding that [Mack] departed Delran simply because she sought a career change," the ALJ determined Mack was entitled to ordinary disability retirement benefits. Although the ALJ found both experts credible, she determined Dr. Gollin's ultimate opinion "was based on a fulsome review of all relevant facts and considerations." On the other hand, the ALJ concluded Dr. LoPreto's assessment was based on a lack of documentation, including that he did not have Mack's resignation letters when he interviewed her. The ALJ also found Dr. LoPreto "did not ask [Mack] direct questions about her reasons for leaving her three jobs or whether she was able to perform her job duties."

The Board rejected the ALJ's recommendation and, specifically, her findings as to the credibility of the experts. Noting Dr. Gollin "is not Board-certified," the Board found the doctor "failed to rely on any objective testing and instead focused almost exclusively on Ms. Mack's own self-reporting and his own observations." The Board further found, unlike Dr. LoPreto who is Board-certified, Dr. Gollin "did not reference the [PAI]," and "acknowledged

9

that objective measures of a psychiatric disability were not present in Ms. Mack's case."

The Board also rejected the ALJ's finding that Mack's continued employment at the juvenile detention center "was distinguishable from her employment as a school administrator because it was 'less taxing and required considerably less work.'" Instead, the Board found Mack's supervisory work at both jobs involved similar duties and, as such, she was not totally and permanently disabled pursuant to our Supreme Court's decision in Richardson v. Board of Trustees, Police & Firemen's Retirement System, 192 N.J. 189, 195 (2007) (holding an applicant is not permanently and totally disabled if the applicant "can continue to work in some other capacity").

Finally, the Board noted the ALJ failed to consider Mack's September 20, 2015 resignation letter, which was submitted nearly two years prior to her application and "said nothing about her psychological condition." The Board therefore denied Mack's application for disability benefits. This appeal followed.

On appeal, Mack primarily argues the Board's decision "is not supported by the substantial, credible evidence in the record," and that the ALJ correctly determined she was totally and permanently disabled when she left Delran in

October 2015. Mack maintains she is therefore entitled to ordinary disability retirement benefits. We disagree.

II.

Our role in reviewing the final decision of an administrative agency is limited. Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011). We defer "to an administrative agency's exercise of its statutorily delegated responsibilities." Lavezzi v. State, 219 N.J. 163, 171 (2014). We "should not disturb an administrative agency's determinations or findings unless there is a clear showing that (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence." In re Virtua-West Jersey Hosp. Voorhees for a Certificate of Need, 194 N.J. 413, 422 (2008).

Our public pension systems are "bound up in the public interest and provide public employees significant rights which are deserving of conscientious protection." Zigmont v. Bd. of Trs., Tchrs.' Pension & Annuity Fund, 91 N.J. 580, 583 (1983). Because "pension statutes are 'remedial in character,'" they are "'liberally construed and administered in favor of the persons intended to be benefited thereby.'" Klumb v. Bd. of Educ. of Manalapan-Englishtown Reg'l High Sch. Dist., 199 N.J. 14, 34 (2009) (quoting

11

Geller v. N.J. Dep't of Treasury, Div. of Pensions & Annuity Fund, 53 N.J. 591, 597-98 (1969)). Nonetheless, an employee has only the rights and benefits provided by those statutes and their enabling regulations. Francois v. Bd. of Trs., Pub. Emps.' Ret. Sys., 415 N.J. Super. 335, 349 (2010). The Board acts in a fiduciary capacity with the obligation to serve the best interests of the pension fund and all its beneficiaries, not just the member seeking the benefit. Mount v. Trs. of Pub. Emps.' Ret. Sys., 133 N.J. Super. 72, 86 (App. Div. 1975).

Pursuant to N.J.S.A. 18A:66-39(b), a TPAF member is eligible for ordinary disability retirement benefits where "[t]he physician . . . designated by the board . . . [conducts] a medical examination of [the member] . . . certified to the board that the member is physically or mentally incapacitated for the performance of duty and should be retired." See also N.J.A.C. 17:1-6.4. We have interpreted the statute to mean the applicant must have left her position due to the disability. In re Adoption of N.J.A.C. 17:1-6.4, 17:1-7.5 & 17:1-7.10, 454 N.J. Super. 386, 399 (App. Div. 2018).

An applicant must prove "she has a disabling condition and must produce expert evidence to sustain this burden." Bueno v. Bd. of Trs., Tchrs.' Pension & Annuity Fund, 404 N.J. Super. 119, 126 (App. Div. 2008); see also

12

Patterson v. Bd. of Trs., State Police Ret. Sys., 194 N.J. 29, 50-51 (2008)). "A teacher with a disabling mental condition may qualify for ordinary disability retirement benefits." Bueno, 404 N.J. Super. at 126.

Relying on N.J.S.A. 52:14B-10(c), Mack argues the Board could not reject the ALJ's credibility findings without first concluding those findings were arbitrary, capricious, unreasonable, or unsupported by the evidence. As we have stated, however, N.J.S.A. 52:14B-10(c) does not apply to expert witnesses. ZRB, LLC v. N.J. Dep't of Env't Prot., Land Use Regul., 403 N.J. Super. 531, 561 (App. Div. 2008). The ALJ's credibility determinations in the present matter involved the expert witnesses' conflicting testimony about the onset of Mack's disability, not lay witness testimony. As such, the mandates of N.J.S.A. 52:14B-10(c) did not apply.

Rather, the Board articulated specific reasons for crediting Dr. LoPreto's testimony over that of Dr. Gollin. The Board explained Dr. Gollin did not base his decision on objective evidence, such as the PAI, as did Dr. LoPreto. Instead, the Board found Dr. Gollin's opinion was based primarily on Mack's "self-reporting and his own observations."

Moreover, Dr. Gollin could not opine as to a specific date or event that triggered Mack's disability, testifying instead it was "around the time" her

13

Delanco contract was not renewed. Nonetheless, Dr. Gollin acknowledged Mack continued working for Delanco for a "short period" afterward. On the other hand, Dr. LoPreto concluded Mack did not become functionally impaired until April 2016, in accordance with her treating physician's report, or June 2016, when she was hospitalized.

Given our limited standard of review, Russo, 206 N.J. at 27, we conclude the Board's denial of Mack's ordinary disability retirement benefits was not arbitrary, capricious, or unreasonable, and "is supported by sufficient credible evidence on the record as a whole," R. 2:11-3(e)(1)(D). To the extent not addressed, Mack's remaining contentions lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2780-20