**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3327-23

JACQUELINE HINSON,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES, PUBLIC
EMPLOYEES' RETIREMENT
SYSTEM,

     Respondent-Respondent.

_____

Argued November 13, 2025 – Decided February 25, 2026

Before Judges Berdote Byrne and Jablonski.

On appeal from the Board of Trustees of the Public Employees' Retirement System, Department of the Treasury, PERS No. xx3698.

Samuel M. Gaylord argued the cause for appellant (Szaferman Lakind Blumstein & Blader, PC, attorneys; Samuel M. Gaylord, on the brief).

Matthew Melton, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Christopher Weber, Assistant

Attorney General, of counsel; Matthew Melton, on the brief).

PER CURIAM

Petitioner, Jacqueline Hinson, appeals from a final agency decision of the Board of Trustees (Board) of the Public Employees Retirement System (PERS) denying petitioner's request for ordinary disability retirement benefits (ODRB).

Because the Administrative Law Judge (ALJ) who denied petitioner's ODRB request did not observe her live testimony heard by another ALJ and could not, therefore, independently assess her demeanor as referenced by the Board's expert, we remand for a new hearing.

I.

Petitioner was employed as a clerk typist for the New Jersey Department of Law and Public Safety and was assigned to the Division of Archives Records and Management Unit of the New Jersey State Police. That unit was located in the agency's basement. Petitioner performed clerical work including typing, organizing and scanning documents, and preparing research materials. She was also responsible for lifting boxes weighing at least twenty-five pounds. Although her official job specification did not mention heavy lifting

A-3327-23

explicitly, the description indicated that the listed duties were only illustrative and did not include every requirement of the role.

In 2012, petitioner injured her left arm, leg, hip and femur in a motor vehicle accident. Petitioner was unable to treat those injuries because she was pregnant. After her child's birth in 2013, she began treating with a neurologist. Notwithstanding this treatment, however, petitioner reported persistent numbness, tingling, and pain, especially in her left arm and leg, which limited her typing speed and made it difficult to perform her job duties. She also experienced difficulty walking, ascending and descending stairs to her basement workplace, and lifting boxes. She reported these activities aggravated her pain and symptoms and also required ongoing pain management and medical intervention, including prescription medication and consultation with pain management specialists. Ultimately, it was determined she fractured her femur and dislocated her hip. A pain management physician recommended a hip replacement. After she left her employment, she had this surgery.

In August 2018, petitioner applied for ODRB, citing "lumbar and cervical radiculopathy[,]" "lumbar disc degeneration[,]" and "lumbago

3

spondylosis with sciatica" among the bases for her application. Her employer certified that no alternative jobs were available for her.

In June 2019, the Board denied petitioner's application and concluded she was not totally and permanently disabled from the performance of her regular and assigned duties. Petitioner appealed and the matter was scheduled for a hearing before the Office of Administrative Law.

Petitioner testified on September 22, 2022, before an ALJ. When she concluded her testimony, the matter was adjourned for eleven months for reasons not clear on the record. When proceedings resumed before a new ALJ, petitioner's neurologist and the Board's expert provided testimony.

Petitioner's treating physician, Dr. James A. Ware, Jr., a board-certified neurologist, testified he relied on clinical records and MRI studies showing nerve irritation, muscle weakness, and progressive decline to opine that petitioner was totally and permanently disabled from performing her clerk typist duties. In contrast, the Board's expert, Dr. Steven Lomazow—also a board-certified neurologist—reviewed petitioner's job description, application materials, medical records from 2018, and multiple MRI scans from 2014 and 2016. He found petitioner's physical and neurological examinations normal, determined the MRI results were age-appropriate and not indicative of

4

disabling impairment, and noted the absence of objective findings to support petitioner's complaints.

Notably, in his report, Dr. Lomazow observed petitioner was "very defensive and very angry" requiring him to be "extremely careful on [his] neurologic examination in order not to exacerbate any of her complaints."  In his testimony before the second ALJ, he opined petitioner "was closed down." Characterizing her as a "defensive and angry woman", Dr. Lomazow stated petitioner was "grossly exaggerating her symptoms with respect to pain . . . . "

In a written opinion, the second ALJ denied petitioner's application for ODRB, giving substantial weight to the Board's expert and ultimately finding she had not met her burden of proof that she was "permanently and totally disabled from the performance of her regular and assigned duties."

The second ALJ stated, "I did not have the opportunity to judge the credibility of petitioner as a witness, as her testimony was presented before the prior [ALJ], and I will give her testimony the appropriate weight."  The ALJ denied petitioner's application for ODRB, and the Board adopted that decision in a final administrative decision (FAD).

Petitioner appealed.

5

II.

Our review of an administrative agency's decision is limited. In re Stallworth, 208 N.J. 182, 194 (2011). "We recognize that agencies have 'expertise and superior knowledge . . . in their specialized fields.'" Hemsey v. Bd. of Trs., Police & Firemen's Ret. Sys., 198 N.J. 215, 223 (2009) (quoting In re License Issued to Zahl, 186 N.J. 341, 353 (2006)). We will not reverse an agency's decision "'unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record.'" Mount v. Bd. of Trs., Police & Firemen's Ret. Sys., 233 N.J. 402, 418 (2018) (quoting Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)).

To determine whether an administrative agency's decision is arbitrary, capricious, or unreasonable, we assess:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law;
>
> (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and
>
> (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

6

[Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018) (quoting Stallworth, 208 N.J. at 194).]

"When an agency's decision meets those criteria, then a court owes substantial deference to the agency's expertise and superior knowledge of a particular field." In re Herrmann, 192 N.J. 19, 28 (2007). "Deference controls even if the court would have reached a different result in the first instance." Ibid.

"An appellate court may not 'engage in an independent assessment of the evidence as if it were the court of first instance.'" Sager v. O.A. Peterson Constr., Co., 182 N.J. 156, 164 (2004) (quoting State v. Locurto, 157 N.J. 463, 471 (1999)). If "an appellate court finds sufficient credible evidence in the record to support the agency's conclusions, that court must uphold those findings, even if the court believes that it would have reached a different result." Ibid. (citing In re Taylor, 158 N.J. 644, 657 (1999)). Sufficient or substantial credible evidence, in this context, is defined as "such evidence as a reasonable mind might accept as adequate to support a conclusion." In re Pub. Serv. Elec. & Gas Co., 35 N.J. 358, 376 (1961).

A PERS member is eligible for ODRB if the employee is "physically or mentally incapacitated for the performance of duty and should be retired."

A-3327-23

N.J.S.A. 43:15A-42; N.J.A.C. 17:2-6.7(a)(2). The burden is on the member to establish the member has a "disabling condition," and the member must "produce expert evidence to sustain this burden." Bueno v. Bd. of Trs., Tchrs. Pension & Annuity Fund, 404 N.J. Super. 119, 126 (App. Div. 2008) (citing Patterson v. Bd. of Trs., State Police Ret., Sys., 194 N.J. 29, 50-51 (2008)). The member must show the disabling condition is total and permanent. Bueno, 404 N.J. Super. at 124; Patterson, 194 N.J. at 42.

The ALJ's determination, which the Board adopted in its FAD, was issued without the benefit of hearing petitioner's testimony and assessing her personally. This fact is heightened by Dr. Lomazow's stated observations of petitioner's demeanor displayed during his examination of her and his specific notation of those observations in both his written report and in his oral testimony.

Because the ALJ who ultimately denied petitioner's ODRB request did not have the opportunity to hear her live testimony, he was unable to assess her credibility properly. While the second ALJ reviewed petitioner's testimony in written form, he could not—and did not—observe her demeanor, tone, or manner as she testified. These elements are essential for making accurate credibility determinations and for appropriately weighing other evidence in the

case, including Dr. Lomazow's observations and testimony regarding petitioner's behavior.

It is well-recognized that a fact finder who hears the case in person, observes the witnesses, and assesses their manner and demeanor is best positioned to make accurate credibility determinations. N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008) (quoting N.J. Div. of Youth & Fam. Servs. v. M.M., 189 N.J. 261, 293 (2007) (Trial judges have the opportunity to make first-hand credibility judgments about witnesses, gaining a "feel of the case" not obtainable from a cold record.)).

Accordingly, we vacate the Board's FAD and remand for a new hearing before a new ALJ. Because the ALJ who rendered the original decision made credibility assessments, we are constrained to order a new hearing at which a single factfinder—unfamiliar with prior credibility determinations—can assess both the testimony provided by the experts and the credibility of petitioner firsthand.

Vacated and remanded for proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

9                                                                        A-3327-23