**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4118-18T2

LUISA DINIS FERRER,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
PUBLIC EMPLOYEES'
RETIREMENT SYSTEM,

     Respondent-Respondent.

_____

Submitted December 1, 2020 – Decided January 13, 2021

Before Judges Gilson and Moynihan.

On appeal from the Board of Trustees, Public Employees' Retirement System, PERS No. 2-1302907.

Alterman & Associates, LLC, attorneys for appellant (Arthur J. Murray, of counsel and on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Alison Keating, Deputy Attorney General, on the brief).

PER CURIAM

Appellant Luisa Dinis Ferrer appeals from the final agency decision of the Board of Trustees, Public Employees' Retirement System denying her accidental disability retirement benefits. That pension plan grants accidental disability retirement benefits if "the member is permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of his [or her] regular or assigned duties." N.J.S.A. 43:16A-7(1). Accordingly, a claimant seeking accidental disability retirement benefits must prove five factors:

> 1. that he [or she] is permanently and totally disabled;
>
> 2. as a direct result of a traumatic event that is
>
>> a. identifiable as to time and place,
>> b. undesigned and unexpected, and
>> c. caused by a circumstance external to the member (not the result of pre-existing disease that is aggravated or accelerated by the work);
>
> 3. that the traumatic event occurred during and as a result of the member's regular or assigned duties;
>
> 4. that the disability was not the result of the member's willful negligence; and
>
> 5. that the member is mentally or physically incapacitated from performing his [or her] usual or any other duty.

[Richardson v. Bd. of Trs., 192 N.J. 189, 212-13 (2007).]

The Board adopted the initial decision of the Administrative Law Judge (ALJ), concluding Ferrer did not prove "she is totally and permanently disabled and . . . physically unable to perform the duties of her position as a teacher's aide." "[C]ognizant that we are reviewing [the Board's] findings and not those of the [ALJ]," Quigley v. Bd. of Trs. of Pub. Emps.' Ret. Sys., 231 N.J. Super. 211, 220 (App. Div. 1989), under our limited review of an administrative agency's decision, In re Carter, 191 N.J. 474, 482 (2007), we affirm.

We will sustain a board's decision "unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." In re Herrmann, 192 N.J. 19, 27-28 (2007); see also Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011). Under this standard, our review is guided by three major inquiries: (1) whether the agency's decision conforms with relevant law; (2) whether the decision is supported by substantial credible evidence in the record; and (3) whether in applying the law to the facts, the administrative "agency clearly erred in reaching" its conclusion. Mazza v. Bd. of Trs., Police & Firemen's Ret. Sys., 143 N.J. 22, 25 (1995); see also In re Stallworth, 208 N.J. 182, 194 (2011).

We are not "bound by an agency's [statutory] interpretation" or other legal determinations. Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973); see also Russo, 206 N.J. at 27. Nevertheless, we accord "substantial deference to the interpretation given" by the agency to the statute it is charged with enforcing. Bd. of Educ. v. Neptune Twp. Educ. Ass'n, 144 N.J. 16, 31 (1996). "Such deference has been specifically extended to state agencies that administer pension statutes[,]" because "'a state agency brings experience and specialized knowledge to its task of administering and regulating a legislative enactment within its field of expertise.'" Piatt v. Police & Firemen's Ret. Sys., 443 N.J. Super. 80, 99 (App. Div. 2015) (quoting In re Election Law Enf't Comm'n Advisory Op. No. 01-2008, 201 N.J. 254, 262 (2010)).

"[T]he test is not whether an appellate court would come to the same conclusion if the original determination was its to make, but rather whether the factfinder could reasonably so conclude upon the proofs." Brady v. Bd. of Rev., 152 N.J. 197, 210 (1997) (internal quotation marks omitted) (quoting Charatan v. Bd. of Rev., 200 N.J. Super. 74, 79 (App. Div. 1985)). "Where . . . the determination is founded upon sufficient credible evidence seen from the totality of the record and on that record findings have been made and conclusions

reached involving agency expertise, the agency decision should be sustained." Gerba v. Bd. of Trs., Pub. Emps.' Ret. Sys., 83 N.J. 174, 189 (1980).

The ALJ's fact finding was based on the testimony of Ferrer and her orthopedic expert, David Weiss, D.O., the Board's expert in orthopedic surgery, Arnold T. Berman, M.D., and the ALJ's review of the plethora of medical documentation detailing the medical treatment Ferrer underwent following a back injury she suffered in October 2010, when she—hired as a teacher's aide, but then serving as a special education teacher's aide—intervened in a physical altercation between two students during which she was forcefully pulled to the floor.

"Ferrer felt something in her back" as she walked one of the students to the principal's office immediately following the altercation, but later experienced "right-sided pain and pain shooting down into her buttocks." She returned to work, but later went from the school nurse's office to her employer's workers' compensation treatment facility where she was diagnosed with lumbosacral sprain. She stayed out of work for a week, but returned and continued working until she filed her application for accidental disability benefits in May 2015. As the ALJ found, "[d]uring that time, she was out of

work intermittently for her back and was being treated by multiple doctors"; the ALJ listed seven medical providers.

Ferrer first claims the Board erred by adopting the ALJ's decision in which he failed to appreciate that, because of her injuries, she was unable to perform the job duties of a special education teacher's aide that require more rigorous physical activity to care for special education students' needs than activities performed by teacher's aides in general education classrooms. She also argues the Board erred by adopting the ALJ's decision because he failed to consider or misinterpreted tangible medical evidence, including notes, reports and diagnostic studies.

The record belies those assertions. The ALJ carefully reviewed the physical medical evidence—delineated in over seven pages of the ALJ's twenty-two page written decision. He considered each doctor's opinion regarding the records and diagnostic studies, including Dr. Weiss's basis for his opinion that Ferrer was totally and permanently disabled as a teacher's aide because since the injury suffered in October 2010, she

> has been unable to function as a teacher's aide which requires her to be able to assist supervised students during emergency drills, assemblies, play periods and field trips. She is also required to lift books and backpacks, be able to perform one to one instruction, be able to perform standing, kneeling and leaning while

6

instructing the students, [with] repetitive bending over the students.

In her merits brief Ferrer contends those activities were specifically required to assist special education students, making that job "more 'physically intense'": "bending, leaning over, [and] stooping." Although the ALJ found "[t]he job descriptions of the two classifications . . . almost identical," he did recognize that a special education teacher's aide's "duties were more intense and physical."

Moreover, an applicant for an accidental disability pension must establish an inability to perform duties in the general area of the applicant's regular employment, rather than merely showing an inability to perform a specific job. Bueno v. Bd. of Trs., Tchrs.' Pension & Annuity Fund, 404 N.J. Super. 119, 130-31 (App. Div. 2008). The ALJ parsed the divergent opinions offered by Dr. Weiss and Dr. Berman. He found both doctors to be "credible, competent witnesses," but found Dr. Berman's opinion "that from an orthopedic standpoint, [Ferrer] did not sustain a permanent injury and had no functional loss and no permanent disability" as a result of the October 2010 incident, and that she "was not totally and permanently disabled from the duties of her occupation [as] a teacher's aide" to be more persuasive and of greater weight than that of Dr. Weiss.

A-4118-18T2

Although Ferrer argues the Board erred by adopting the ALJ's decision because the ALJ "did not consider the full medical record" in determining "which expert was more persuasive" and failed to appreciate she was asymptomatic before the October 2010 injury, we reiterate the record clearly shows that the ALJ carefully perpended all of the medical evidence. The ALJ's conclusions are supported by the record.

The ALJ observed "Dr. Berman's physical examination of [Ferrer] differed from Dr. Weiss's examination in one notable way: [she] did not disclose to Dr. Berman that she was injured in 2004." Dr. Berman did learn that MRI studies revealed Ferrer had, as the ALJ found, "a herniated disc in 2004 at [level] L5-S1 that was causing pressure on the right S1 nerve root." The ALJ assessed Dr. Berman's conclusion that Ferrer "was not asymptomatic from 2004 to 2010, in part, because the trauma was a multiple level involvement of at least [three] levels, with the herniation at L5-S1."

The ALJ ultimately credited Dr. Berman's rationale for determining Ferrer was not asymptomatic prior to the 2010 incident:

> Dr. Berman's conclusion was that [Ferrer] had long-standing degenerative disc disease that had progressed but was not disabling and that her 2010 injury involved the musculature because there was no evidence of disc injury. She was treated, and the injury

got better. Her ongoing symptoms were the same symptoms that she had prior to the 2010 incident.

Dr. Berman opined that there was no medical evidence that [Ferrer] sustained a new injury during the 2010 incident. He based this conclusion on various parts of [her] medical history, including the use of lumbar epidural steroid injections to find relief because the surgery did not work. He also opined that the myelogram performed by Dr. Delasotta and the MRIs showed multilevel long-standing degenerative disc abnormalities that varied [a] little bit but not significantly since 2004.

Dr. Berman defined degenerative disc disease as a reduction of the disc space due to the desiccation, which acts as the shock absorber between the discs, and opined that a bulge is not due to trauma but due to degeneration. The progression of the three-level degeneration was accelerated by the petitioner's weight which at the time of the IME was 270 pounds on her five-foot-six-inch frame.

According to Dr. Berman the 2010 MRI showed that the disc degeneration became extended from [levels] L4[-L]5 and L5[-]S1 to include [level] L3[-L]4. The herniation was not described the same as in the 2004 MRI, but Dr. Berman agreed it was still present.

The ALJ explained why he found Dr. Weiss's opinion that Ferrer was totally and permanently disabled was "not supported by a closer analysis of the documentary evidence" in Ferrer's medical history, including: a treating physician's June 2014 report documenting Ferrer's discharge from care, determining Ferrer "had reached maximum medical improvement" allowing her "return to work full time and full duty"; an October 2015 report by an advanced

practice nurse authorizing a leave of absence from October 1, 2015 through January 1, 2016 after Ferrer presented with complaints of depression, headaches and lack of daily motivation because of health issues, but without mention of any back pain or radiation therefrom; an October 20, 2015 "Work Note" from a doctor indicating Ferrer "was able to work full time [without] restrictions"; a January 2016 discography report that included a comment that the disc descriptions at levels L2-L3, L3-L4 and L4-L5 were normal; and doctor's notes from July 2015 indicating Ferrer could return to work without restrictions and an August 2015 clinical summary from the same doctor indicating she had "improved considerably and . . . was able to work with restrictions only as to lifting and stairs."

The ALJ also highlighted that Dr. Berman reviewed the actual 2004 MRI films, reviewed "all the medical reports . . . [and] compar[ed] them to one another," and "performed his own independent examination which was consistent with the findings of the treating physicians."

"The applicant for . . . disability retirement benefits has the burden to prove that he or she has a disabling condition and must produce expert evidence to sustain this burden." Id. at 126. It is not our place to second-guess or substitute our judgment for that of the Board and, therefore, we do not "engage

in an independent assessment of the evidence as if [we] were the court of first instance." State v. Locurto, 157 N.J. 463, 471 (1999); see also In re Taylor, 158 N.J. 644, 656 (1999). With regard to expert witnesses, we rely upon the ALJ's "acceptance of the credibility of the expert's testimony and the [judge's] fact-findings based thereon, noting that the [judge] is better positioned to evaluate the witness'[s] credibility, qualifications, and the weight to be accorded [to his or] her testimony." In re Guardianship of D.M.H., 161 N.J. 365, 382 (1999). There was sufficient credible evidence in the record to support the ALJ's selection of Dr. Berman's opinion over that of Dr. Weiss; we are therefore bound by the Board's adoption of those findings. See Gerba, 83 N.J. at 189; Quigley, 231 N.J. Super. at 220-21.

Applying our highly deferential standard of review, we are satisfied there is sufficient credible evidence in the record to support the Board's determination that Ferrer failed to show she was unable to return to work as a teacher's aide. The Board adopted the ALJ's findings of fact, which were based on his review of the medical evidence and his assessment of both the credibility of the experts and the weight to be given to their opinions. We must give appropriate deference to those findings where, as here, they are based on sufficient credible evidence

11

in the record, <u>Taylor</u>, 158 N.J. at 658-59, including Ferrer's return to work for over five years before submitting her pension application.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION