# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2564-19

K.S.,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
PUBLIC EMPLOYEES'
RETIREMENT SYSTEM,

     Respondent-Respondent.

_____

Argued October 4, 2021 – Decided October 15, 2021

Before Judges Fasciale and Firko.

On appeal from the Board of Trustees of the Public Employees' Retirement System, Department of the Treasury, PERS No. x-xxxx670.

Samuel J. Halpern argued the cause for appellant.

Jeffrey D. Padgett, Deputy Attorney General, argued the cause for respondent (Andrew J. Bruck, Acting Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Connor V. Martin, on the brief).

PER CURIAM

K.S.[1] appeals from a January 16, 2020 final agency decision by the Board of Trustees (Board) of the Public Employees' Retirement System (PERS) denying her application for ordinary disability retirement benefits. In doing so, the Board upheld an initial determination by an administrative law judge (ALJ) that K.S. failed to demonstrate she was totally and permanently disabled from carrying out her duties as a senior probation officer (SPO). We conclude the ALJ made an erroneous evidentiary ruling, reverse, and remand for further proceedings consistent with this opinion.

In 2000, K.S. became a member in PERS as an employee for the State, first at the Juvenile Justice facility in Mercer County, then later in the Child Support unit in Bergen County. In 2003, she transferred to the Sussex County probation office. At that point, K.S.'s job involved office work, court appearances, and field work. The circumstances leading to K.S.'s application for ordinary disability benefits pertain to her assignment in Sussex County as an SPO.

The alleged problems that led to her application began in 2008. K.S. testified that at that time, her supervisor indicated K.S. could not adjust her work

---

[1] We utilize initials to protect appellant's privacy.

A-2564-19

hours to accommodate for physical therapy after K.S.'s thumb surgery. Later in 2008, K.S. requested that another officer cover a court appearance for her. K.S. testified that another probation officer "yell[ed] and scream[ed] at [her]" when K.S. had not given the officer the case's file. K.S. described other instances of conflict with coworkers in Sussex County. In 2009, K.S. requested a transfer out of the child support unit due to "the hostile environment" and was given a new position as the community service director. In 2010, K.S. became aware of a rumor she was having an affair with a coworker. K.S. later learned coworkers were kicking on her office door and that a coworker spread a racist rumor about her family. K.S. testified she felt unprotected and unsafe around her coworkers, and that "management was condoning this type of behavior."

During K.S.'s subsequent pregnancy, she was not permitted to adjust her hours to attend doctor's appointments. K.S. stayed overnight in the emergency room due to stress. Following maternity leave, K.S. received a Human Resources (HR) letter in October 2012 to return to work. The letter offered three choices: (1) return to the Sussex County Family Unit; (2) transfer to Morris County Supervision; or (3) resign. K.S. returned to work in Sussex County but had difficulty focusing and eventually transferred to the Children In Court (CIC) unit. K.S. felt the CIC position involved an unrealistic amount of work, which

3

caused her increased stress. When K.S. requested another position, she was told there were no other positions available. She started seeing a therapist and went into outpatient therapy.

K.S. resigned from her position because she "couldn't handle it anymore" and feared transferring from Sussex County because of paranoia that her HR records would follow her. Following her resignation, K.S. began treatment with Dr. Thomas D'Amato, a psychiatrist, at Morristown Behavioral Institute. K.S. was admitted to the Recovery Institute of South Florida on April 15, 2014, and discharged on May 9, 2014.

In May 2014, K.S. filed an application for ordinary disability retirement benefits citing major depressive disorder, post-traumatic stress disorder, and generalized anxiety disorder. The Board denied K.S.'s application, she appealed, and the matter was transferred to the Office of Administrative Law (OAL) as a contested case. The ALJ conducted hearings over two days in September 2016 and March 2017.

Before the first hearing, the Board moved to bar Dr. D'Amato from testifying as an expert witness based on Rule 4:17-4(e). The Board argued the two-page Medical Examination by Personal or Treating Physician form (the form) rendered by Dr. D'Amato did not qualify as an expert report because it

4

was "virtually illegible" and listed information without providing the basis of Dr. D'Amato's conclusions. K.S. argued Rule 4:17-4(e) was inapplicable, and even if the rule did apply to the trial before the ALJ, the Board could have asked for clarification if they did not understand Dr. D'Amato's handwriting. K.S.'s counsel pointed out that there was no prejudice because he provided Dr. D'Amato's full treatment records during discovery. The ALJ reserved decision until Dr. D'Amato testified.

Dr. D'Amato testified he treated K.S. from March 22, 2014, until September 10, 2016. Dr. D'Amato conducted a mental status examination during K.S.'s first visit, and based on the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM-IV), he diagnosed her with major depression disorder. He explained that the DSM-IV is a diagnostic manual used by psychiatrists for mental diagnoses. Dr. D'Amato prescribed various medications during the treatment, including Zoloft, Trazodone, Klonopin, and Seroquel XR.

In September 2016, Dr. D'Amato diagnosed her with post-traumatic stress disorder, major depressive disorder, bipolar type disorder, and panic disorder. Dr. D'Amato testified there had not been an improvement to K.S.'s condition during his treatment that would allow her to return to her job. Dr. D'Amato

5

opined, based on her job description, treating her eleven times, adjusting her medications, and his last observation of her, that K.S. was unable to work in any capacity.

Testifying for the Board was Dr. Richard Filippone (Dr. Filippone), a clinical psychologist who provided an independent evaluation of K.S. Dr. Filippone's assessment, which was in July 2014, was based on a mental status examination, medical records, treatment records, medical psychiatric records, K.S.'s job description, and her application for disability. Dr. Filippone disagreed with Dr. D'Amato's diagnosis of major depressive disorder and post-traumatic stress disorder. Dr. Filippone diagnosed K.S. with a generalized anxiety disorder. He opined that K.S.'s diagnosis did not prevent her from working.

The ALJ concluded—in her written decision—that Dr. D'Amato was unqualified as an expert witness because he produced an expert report and form that purportedly lacked clinical information or explanations. The ALJ stated Dr. D'Amato offered "only net opinions, unsupported by the factual evidence," and K.S. failed to produce "other documents providing such clinical/data-driven evidence as is required to meet this burden." The ALJ, therefore, concluded K.S. "failed to satisfy her burden of proving that she is totally and permanently

6

disabled from carrying on her regular and assigned duties as a senior probation officer."

The ALJ stated further that K.S. "provided inadequate medical testimony, lacking in all elements necessary to qualify as medical expert testimony to show that her disability is total and permanent, and that this disability precludes her from performing these duties anywhere in the State." In January 2020, the Board upheld the ALJ's determination and denied K.S.'s application for ordinary disability retirement benefit.

On appeal, K.S. raises the following points for this court's consideration:

POINT I

THE [ALJ] IMPROPERLY DISQUALIFIED DR. D'AMATO AS [K.S.]'S EXPERT.

POINT II

THE BOARD'S FINAL ADMINISTRATIVE DETERMINATION WHICH ACCEPTED THE OPINION OF DR. FILIPPONE, A CLINICAL PSYCHOLOGIST, OVER THAT OF DR. D'AMATO, [K.S.]'S TREATING PHYSICIAN OF TWO YEARS' STANDING, WAS ARBITRARY, CAPRICIOUS AND UNREASONABLE AND SHOULD BE REVERSED.

A-2564-19

A. The <u>Bueno</u>[2] Standard

B. Opinion [O]f Treating Physician [V]s. Consultant

I.

We begin by addressing K.S.'s contention that the ALJ erred by disqualifying Dr. D'Amato as an expert witness. K.S. contends Dr. D'Amato's opinions were not net opinions because they were based upon his diagnoses of her, his treatment of her, his treatment records over a two-year period, his observation notes, and notes from facilities where K.S. received treatment, which she argues are expressed in the form report and his testimony at the trial. She also argues that the ALJ's decision to disqualify Dr. D'Amato after the close of the record prejudiced K.S. because she was otherwise deprived of an opportunity to raise an objection and perhaps retain a new expert.

The decision to bar expert testimony based on the net opinion rule is an evidentiary ruling. See <u>In re Civil Commitment of A.Y.</u>, 458 N.J. Super. 147, 168 (App. Div. 2019). "When reviewing an evidentiary ruling whether to bar expert testimony, we [ordinarily] apply considerable deference to the trial [judge] and generally do not disturb the trial [judge]'s decision unless the ruling

---

[2] <u>Bueno v. Bd. of Trs., Tchrs.' Pension & Annuity Fund</u>, 404 N.J. Super. 119 (App. Div. 2008).

demonstrably comprises an abuse of discretion." Ibid. An appellate court "will not substitute [its] judgment unless the evidentiary ruling is 'so wide of the mark' that it constitutes 'a clear error in judgment.'" State v. Garcia, 245 N.J. 412, 430 (2021) (quoting State v. Medina, 242 N.J. 397, 412 (2020)).

K.S. argues the ALJ failed to apply Delvecchio vs. Twp. of Bridgewater, 224 N.J. 559 (2016). In Delvecchio, our Court held a treating physician may offer opinion testimony regarding a patient's disability, limited to diagnosis and treatment, if the offering party provides notice to the opposing party and complies with discovery requests. Id. at 579-80. In its reply to K.S.'s exceptions, the Board argues the limitation in Delvecchio only allows Dr. D'Amato to discuss his observations, treatment, and diagnosis, and does not allow him to testify as an expert without a sufficient report. Of course, by reserving decision and allowing him to testify at the trial, the ALJ permitted Dr. D'Amato to explain in great detail his expert opinion, including its basis.

K.S.'s claim is for ordinary disability retirement benefits pursuant to N.J.S.A. 43:15A-42 and is governed by the rules of the OAL. N.J.S.A. 52:14B-10(c). The operative rule for the admissibility of expert witnesses in an administrative proceeding is N.J.A.C. 1:1-15.9(b). The rule states:

> If a witness is testifying as an expert, testimony of that witness in the form of opinions or inferences is

admissible if such testimony will assist the judge to understand the evidence or determine a fact in issue and the judge finds the opinions or inferences are:

1. Based on facts and data perceived by or made known to the witness at or before the hearing; and

2. Within the scope of the special knowledge, skill, experience, or training possessed by the witness.

The standard set forth in N.J.A.C. 1:1-15.9(b) is similar to N.J.R.E. 702, which provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." However, N.J.S.A. 52:14B-10(a) expressly states that parties in a contested administrative hearing are not "bound by rules of evidence whether statutory, common law, or adopted formally by the Rules of Court." And "[a]lthough common-law rules of evidence do not apply strictly to administrative tribunals, the fundamentals of fair and adequate procedure constituting due process must be observed." In re Application of Howard Sav. Bank, 143 N.J. Super. 1, 6-7 (App. Div. 1976).

The Board's position that Dr. D'Amato is unqualified as an expert because his report is purportedly insufficient is without merit. The rules governing an

10

administrative tribunal permit an expert witness to testify if the testimony will assist the ALJ to understand the evidence or determine a fact in issue, and the expert's opinions are based in facts or data. N.J.A.C. 1:1-15.9(b). When the ALJ reserved her decision, she acknowledged differences between a hearing before an ALJ and a trial in the Superior Court. She stated:

> [I]f there is a voir dire and [Dr. D'Amato] . . . is board certified or qualifies in some other way in his area of expertise . . . he can be admitted as an expert without a report. And it has happened here before under [the OAL's] relaxed rules of evidence. And moreover, we have what purports to be a report . . . So, should he qualify as an expert when he's voir dired, he could be potentially admitted as an expert in my view . . .

Nonetheless, an administrative tribunal must follow "adequate procedure" to ensure due process to the parties. In re Application of Howard Sav. Bank, 143 N.J. Super. at 6-7.

The form is a two-page document entitled "Medical Examination by Personal or Treating Physician" prepared by Dr. D'Amato on May 24, 2014. The form is brief and handwritten, yet it includes Dr. D'Amato's findings from the examination, his diagnosis, and his opinion that K.S. is totally and permanently disabled with a brief explanation. The form is the standard form used by the Division of Pension and Benefits (the Division) to be filed in support of an application for disability retirement benefits.

Dr. D'Amato was not required to submit a report to be admitted as an expert witness under the rules governing administrative tribunals. N.J.A.C. 1:1-15.9(b). The submission of the form did not offend the principles of due process, as it is the Division's standard form in an application for disability retirement benefits and provided the necessary basis for his expert opinions. Therefore, Dr. D'Amato should not have been disqualified as an expert witness on the sole basis that he failed to submit a sufficient expert report.

The main issue is whether the ALJ abused her discretion by rejecting Dr. D'Amato's testimony as a net opinion. The net opinion rule "forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data." Townsend v. Pierre, 221 N.J. 36, 53-54 (2015) (quoting Polzo v. Cnty. of Essex, 196 N.J. 569, 583 (2008)). The expert must "'give the why and wherefore' that supports the opinion, 'rather than a mere conclusion.'" Id. at 54 (quoting Polzo, 196 N.J. at 583). The expert's opinion testimony must also "relate to generally accepted . . . standards, not merely to standards personal to the witness." Taylor v. DeLosso, 319 N.J. Super. 174, 180 (App. Div. 1999) (quoting Fernandez v. Baruch, 52 N.J. 127, 131 (1968)).

It is not clear from the initial decision whether the ALJ disqualified Dr. D'Amato under the net opinion rule or concluded that he lacked credibility to

sustain K.S.'s burden. In the testimony and factual discussion of her decision, the ALJ stated, "Dr. D'Amato was admitted as an expert in psychiatry and testified on behalf of [K.S.]." The report includes a footnote that stated, "Dr. D'Amato did not produce an expert report, and relied upon the Medical Examination by Personal or Treating Physician form (P-7) to support his diagnoses."

But in the legal discussion of her decision, the ALJ noted Dr. D'Amato "offer[ed] only net opinions, unsupported by factual evidence" and that his reliance on the two-page form lacked "any clinical information or explanations as to how the conclusions were reached." The ALJ wrote in her opinion: "[t]he expert evidence that [K.S.] has introduced in order to attempt to sustain this burden is inadequate, lacking the specificity and data/clinical information on which such an expert opinion must be based." We therefore conclude the ALJ barred the testimony relying on the net opinion rule.

Dr. D'Amato's testimony did not amount to a net opinion. His opinion that K.S. was unable to work as an SPO was based on two years of treating K.S., in which he observed her symptoms and listened to her complaints. Dr. D'Amato's initial diagnosis of K.S. was based on a mental status examination and reference to the DSM-IV Manual. Dr. D'Amato continued to treat her and

13

see her every "month and a half or two months." Dr. D'Amato updated her diagnoses and adjusted her medications. And he relied on notes from the facilities where K.S. received in-patient care.

In the two-page form, Dr. D'Amato stated, "[K.S.] was constantly harassed by supervisors at the job site, unable to focus on her job duties, having anxiety, palpitations. Causing her depression, nightmares at nighttime." Based on his extensive observations of K.S., reliance on the DSM-IV Manual, adjusting her medication over a two-year period, reviewing her job description, and reviewing the other medical records, Dr. D'Amato concluded that she was unable to work in any capacity.

Dr. D'Amato's testimony provided the "why" and "wherefore" for his medical opinion. His testimony went beyond a mere conclusion as he referenced a well-known standard for mental diagnoses and the factual foundation for his opinion. Therefore, the ALJ's decision to exclude Dr. D'Amato's testimony based on the net opinion rule was an abuse of discretion.

II.

Because we are remanding for a new trial, we need not resolve whether the Board's decision was arbitrary, other than to say it was unreasonable to adopt

14

the ALJ's opinion given the erroneous evidentiary determination. Nevertheless, we make the following brief remarks.

This court has recognized "'[j]udicial review of an administrative agency action is limited' because respect is due to the 'expertise and superior knowledge' of an agency in its specialized field." Francois v. Bd. of Trs. of Pub. Emps.' Ret. Sys., 415 N.J. Super. 335, 347 (App. Div. 2010) (internal quotations omitted) (quoting Hemsey v. Bd. of Trs. Police & Firemen's Ret. Sys., 198 N.J. 215, 223 (2009)). An appellate court will only reverse an agency's decision if it is "arbitrary, capricious or unreasonable or it is not supported by substantial credible evidence in the record as a whole." Stevens v. Bd. of Trs. of Pub. Emps.' Ret. Sys., 294 N.J. Super. 643, 651 (App. Div. 1996) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)). The party challenging the administrative action bears the burden of making that showing. Lavezzi v. State, 219 N.J. 163, 171 (2014).

To qualify for ordinary disability retirement benefits under N.J.S.A. 43:15A-42, a petitioner must establish by a preponderance of the credible evidence that he or she is "physically or mentally incapacitated for the performance of duty and should be retired." And "the applicant for ordinary disability retirement benefits has the burden to prove that he or she has a

disabling condition and must produce expert evidence to sustain this burden." Bueno, 404 N.J. Super. at 126. A petitioner "must establish incapacity to perform duties in the general area of his [or her] ordinary employment[,] rather than merely show[ ][an] inability to perform [his or her] specific job." Id. at 130 (quoting Skulski v. Nolan, 68 N.J. 179, 205-06 (1975)).

Determining whether she has met her burden depends on the evidence produced at the new trial on remand. On this record, Dr. D'Amato testified K.S. was disabled from her job based on her medical records, treatment, symptoms, and clinical observations for several years. He added that there has been no improvement and that, in his opinion, K.S. is totally and permanently disabled from performing her duties as an SPO. As her treating psychiatrist, he said K.S. is unable to work in any capacity. Counsel for the Board thoroughly cross-examined him. On cross-examination, he attributed her inability to work to constant harassment by supervisors, and stated K.S. has never recovered from her mental health condition. Whether K.S. meets her burden on remand is yet to be seen.

We reverse and remand for a new trial. In fairness to the ALJ, since she made credibility determinations, we direct a new ALJ to try the case on remand.

We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2564-19